

**SO ORDERED.**

**SIGNED this 21 day of June, 2024.**

_____

**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

**IN RE:**

**WIRELESS SYSTEMS SOLUTIONS LLC,**                    **Case No. 22-00513-5-JNC**
                                                                                      **Chapter 7**

     **Debtor.**

_____

## ORDER ON SMARTSKY'S MOTION FOR CONTEMPT AND SANCTIONS

The matter before the court is the Motion for Order of Contempt and Sanctions (Dkt. 379; the "Motion") filed by creditor SmartSky Network, LLC ("SmartSky") against Laslo Gross and Susan Gross on April 12, 2024. Mr. and Mrs. Gross, a married couple, filed a joint response in opposition on April 26, 2024 (Dkt. 380; the "Response").[1]  A hearing was noticed for and held in Greenville, North Carolina on May 16, 2024. Attorney Christopher J. Blake was present on behalf of SmartSky; Mr. and Mrs. Gross appeared pro se; and George F. Sanderson participated in his capacity as the chapter 7 trustee (the "Trustee") of the case.

In the Motion, SmartSky takes exception to the filing of a lawsuit in the United States District Court for the Eastern District of North Carolina by Mr. and Mrs. Gross, proceeding pro

_____

[1] A separate countermotion for sanctions (Dkt. 381) filed by Mr. and Mrs. Gross directed at SmartSky was denied by the court in its order of May 17, 2024 (Dkt. 393).

se, against individual SmartSky officers and a former SmartSky contractor (*Gross v. Dodson*, Civil Action No. 5:24-cv-184-FL; the "District Court Action"). SmartSky contends that the District Court Action violates the automatic stay of 11 U.S.C. § 362 as applicable in this chapter 7 bankruptcy case because some of the claims asserted are listed as assets of the chapter 7 debtor, Wireless Systems Solutions LLC ("Debtor" or "WSS"), and hence the bankruptcy estate, in its bankruptcy case schedules.

Significantly, the Motion is not brought by the officer defendants in the District Court Action or the Trustee. Instead, in the Motion, SmartSky argues that the act of filing the District Court Action is an abuse of the bankruptcy process and violates the automatic stay because: "(a) the Court's order converting this case to Chapter 7 removed the Grosses from a position to file lawsuits based on any claims that belong to WSS; and (b) the claims asserted in the lawsuit have not been abandoned." (Motion at pg. 1, ¶ 2).  WSS requests the court hold Mr. and Mrs. Gross in contempt, impose monetary sanctions, and require they dismiss the District Court Action.

## BACKGROUND

Debtor filed a voluntary chapter 11 Bankruptcy petition on March 9, 2022 (the "Petition Date"). The case was converted to chapter 7 on October 12, 2022 (Dkt. 279; the "Conversion Order"). SmartSky holds by far the largest unsecured claim against Debtor, listing the claim at $12,986,212.33 in Proof of Claim No. 5 filed July 7, 2022.  As detailed in the 98-page arbitration hearing award and panel report attached thereto ("Arbitration Award"), the claim originates from a prepetition arbitration decision issued after several weeks of evidentiary hearings that found WSS and the Grosses (among others) jointly and severally liable to SmartSky for the amount stated based on findings of breach of contract, misappropriation of trade secrets, unfair and deceptive trade practices, and other commercial torts. (Arbitration Award pp. 85-90).

On March 22, 2024, Mr. and Mrs. Gross commenced the District Court Action by filing a complaint (Dist. Ct. Dkt. 1; the "Complaint"). The named defendants therein are Mike Dodson, David Claassen, and Ryan Stone, all of whom are officers of SmartSky, and Nick Dodson, who is Mike Dodson's son and a former SmartSky contractor. In the introductory section of the Complaint, Mr. and Mrs. Gross acknowledge that WSS listed the following (collectively, the "Potential Claims") as its property in Schedule A/B of its bankruptcy filing (*See* Dkt. 48; Schedules and Statements):

a.  Potential Claim against current & former SSN employees, board members, agents, contractors, and affiliated companies and companies and individuals SSN contracted with for development of air to ground technology for Federal & State Misappropriation of Trade Secrets

b.  Potential Claim against current & former SSN employees, board members, agents, contractors and affiliated companies and companies and individuals SSN contracted with for development of air to ground technology for Federal Copyright Infringement

c.  Potential Claim against current & former SSN employees, board members, agents, contractors and affiliated companies and companies and individuals SSN contracted with for development of air to ground technology for Digital Millennium Copyright Act Violations

d.  Potential Claim against current & former SSN employees, board members, agents, contractors and affiliated companies and companies and individuals SSN contracted with for development of air to ground technology for Computer Fraud and Abuse Act Violations 18 U.S.C.

e.  Potential Claim against current & former SSN employees, board members, agents, contractors and affiliated companies and companies and individuals SSN contracted with for development of air to ground technology for North Carolina Unfair and Deceptive Trade Practices G.S. 75-1.1

f.  Claims against former WSS contractors for Breach of contract (NDA), Federal misappropriation of trade secrets, State misappropriation of trade secrets, Federal copyright infringement, Digital Millennium Copyright Act violations, Computer Fraud and Abuse Act violations 18 U.S.C. § 1030, North Carolina Unfair and Deceptive Trade Practices G.S. § 75-1.1.

(Complaint at 2-3).

The Complaint proceeds with 35 more pages of numbered allegations. Beginning on page 21 and following, seven causes of action are asserted, being denominated as follows:

> COUNT ONE: Theft of Trade Secrets. Federal Defend Trade Secrets Act 18 U.S. Code § 1832
>
> COUNT TWO: Trade Secret Misappropriation. Fraud and related activity in connection with computers. Federal Defend Trade Secrets Act 18 U.S. Code § 1030
>
> COUNT THREE: Violation of H.R. 3919
>
> COUNT FOUR: Trade Secret Misappropriation. North Carolina Trade Secrets Protection Act. N.C. Statute § 24-66-152, *et seq*.
>
> COUNT FIVE: North Carolina Unfair and Deceptive Trade Practices. G.S. § 75-1.1.
>
> COUNT SIX: Economic Espionage. Federal Defend Trade Secrets Act 18 U.S. Code § 1831
>
> COUNT SEVEN: Civil Proceedings. Federal Defend Trade Secrets Act 18 U.S. Code § 1836

In the Complaint and in their defense at the hearing on the Motion, Mr. and Mrs. Gross assert they own and control the Potential Claims, less any "intellectual property of WSS," which they fully acknowledge remain bankruptcy estate assets retained by the Trustee.  The Grosses maintain they came to control the Potential Claims under an assignment from WSS after the Trustee, pursuant to 11 U.S.C. § 554 and with court approval, abandoned back to WSS all its assets less four categories of exclusions as discussed below.  *See* Consent Order Granting Trustee's Motion to Abandon Property entered March 1, 2023 (Dkt. 366; the "Order Abandoning Property").

In Paragraph Two of the Order Abandoning Property, the Trustee abandoned "all tangible and intangible property of Wireless Systems Solutions, LLC…" other than the four expressly excluded categories of estate assets. The first three exclusions pertain to an automobile, the company's books and records, and Bankruptcy Code chapter 5 causes of action, none of which

have bearing here. However, the scope and extent of the fourth excluded item, lies at the heart of this controversy, being:

> 3.d. Any and all tangible or intangible property of the Debtor reflecting the development of wireless communications products or portions of such products by the Debtor, including all prototypes or other physical manifestations of the development of products, or portions of products (including but not limited to circuit boards and software), and all associated intellectual property (including patents, copyrights, and trade secrets) and work product.

Order Abandoning Property, ¶3(d) (the "Intellectual Property").

Thus, other than causes of action involving the Intellectual Property and Bankruptcy Code chapter 5 actions, the broad abandonment language of paragraph two abandons all other viable causes of action that could be brought by WSS. Mr. and Mrs. Gross contend that the abandonment includes the Potential Claims, minus the Intellectual Property aspects. As stated at the hearing (Hearing Audio, 21:50-24:00) and in the preamble of the Complaint, they do not "seek redress as it relates to WSS' Intellectual Property ("IP") while it was a going concern and was 'carved out' as part of the estate retained by the Trustee in Chapter 7." (Complaint at 3.) Instead, with respect to the Potential Claim, Mr. and Mrs. Gross, as the plaintiffs in the District Court Action seek to recover "damages suffered … as a result of the conspiracy conceived and undertaken by the Defendants as employees of and contractors to [SmartSky] and affiliated entities in carrying out these and other activities." *Id.*

Mr. and Mrs. Gross maintain that upon entry of the Order Abandoning Property, the non-intellectual property right portions of the Potential Claims reverted to WSS as the case debtor. Mrs. Gross appears to control a family trust that, as discussed below, owns virtually all of WSS. After entry of the Order Abandoning Property, on December 19, 2023, WSS purported to sell and assign to the Grosses personally all of the abandoned assets (excluding those retained by the Trustee such as the Intellectual Property) for the sum of $50. (Document attached to the counter

5

motion filed by Mr. and Mrs. Gross (Dkt. 381, at page 7 labeled "Gross Family Protection Trust" and referred to herein as the "Transfer Document.")[2]

In the Motion, SmartSky asserts Mr. and Mrs. Gross cannot be the owners of the Potential Claims because the claims for relief asserted in the District Court Action are inseparable from the Intellectual Property retained by the bankruptcy estate. It further maintains that even if the WSS Intellectual Property could be severed in the District Court Action, the Potential Claims were never properly transferred to Mr. and Mrs. Gross and remain the sole property of WSS. As a result, SmartSky contends, the claims Mr. and Mrs. Gross made in the District Court Action contain substantial portions of the property of the bankruptcy estate that only a bankruptcy trustee can pursue, which case he has declined to join or otherwise consent to prosecution of by the Grosses. In pursuing causes of action that are the exclusive province of the bankruptcy trustee, SmartSky contends Mr. and Mrs. Gross have violated the automatic stay of section 362 of the Bankruptcy Code. Therefore, pursuant to that section's provisions and the powers of enforcement contained in section 105 of the Bankruptcy Code, SmartSky requests this court impose monetary sanctions and injunctive relief against Mr. and Mrs. Gross.[3]

---

[2] The body of that document, however, followed by signatures and a date of December 19, 2023, states:

Susan L. Gross, Family Trustee under The Gross Family Protection Trust, agrees to sell the Gross Family Protection Trust's interest in the abandoned assets of Wireless Systems Solutions LLC to the following individuals for consideration of $50:
Laslo Gross
Susan L. Gross

[3] The Trustee, understandably, did not file a response to the Motion, nor has he appeared in the District Court Action. At the hearing, he acknowledged that the Intellectual Property of WSS, along with the other excluded assets remain with the bankruptcy estate, and that he does not concede that Mr. and Mrs. Gross have segregated and are not pursuing portions of the retained WSS Intellectual Property assets in the District Court Action.

# ANALYSIS

## I.    GENERAL JURISDICTION

The court has general jurisdiction over the Motion pursuant to 28 U.S.C. §§ 151 and 1334. Further, it is authorized to hear this matter under the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina. In addition, this discrete matter, being a motion filed within the bankruptcy case pursuant to the contested motion procedures of Federal Rule of Bankruptcy Procedure 9014 and pertaining to the automatic stay provisions of 11 U.S.C. § 362, is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G), which this bankruptcy court may fully hear and determine.

## II.    JURISDICTION AFTER ABANDONMENT

### A.    Abandonment of Estate Assets

Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554. The court's jurisdiction, however, does not depend "on whether or not the property is property of the estate or whether or not the property has been abandoned." *In re Gunter*, 410 B.R. 178, 180 (Bankr. E.D.N.C. 2008). Section 1334 of Title 28 of the United States Code confers original and exclusive jurisdiction over a bankruptcy case to a federal court sitting as a bankruptcy court. Section 1334(e)(1) provides that the court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction "of all the property, wherever located, *of the debtor* as of the commencement of such case, *and any property of the estate*." 28 U.S.C. § 1334(e)(1) (emphasis added).

The coin of property in bankruptcy cases has two sides: the estate and the debtor. When property is abandoned by a trustee pursuant to section 554, it ceases to be property of the

bankruptcy <u>estate</u>, and as a result, a trustee has no further authority to administer the abandoned asset. However, despite the abandonment and loss of trustee/estate standing, the affected asset *remains property of the bankruptcy debtor.* Therefore, pursuant to 28 U.S.C. § 1334(e)(1), the Bankruptcy Code, and consequently, the jurisdiction of this bankruptcy court, continues to extend post-abandonment over debtor assets even if the jurisdiction ceased over the estate's side of the interest due to abandonment. *See In re Gunter*, 410 B.R. at 181 (finding retention of jurisdiction over property of the debtor after abandonment by the estate); *In re Jones*, 339 B.R. 360, 363 (Bankr. E.D.N.C. 2006).

### B.  Effect of the Automatic Stay and Contempt Power

The filing of a petition in bankruptcy "operates as a stay, applicable to all entities, of" eight particular categories of events or acts. Of particular relevance here are the following subsections:

(1)  The commencement … of a judicial …proceeding against the debtor that … could have been commenced before the commencement of the case under this title ….

(3)  any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(6)  any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title….

11 U.S.C. §§ 362(a)(1), (3) and (6).

Generally speaking, actions taken in violation of the automatic stay are considered *void ab initio*. *Griffin v. Wardrobe (In re Wardrobe), 559 F.3d 932, 934 (9th Cir. 2009); Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir.1992). Creditors who attempt to enforce their nonbankruptcy law rights against a debtor or its property without first obtaining relief from the stay may be held liable for damages, including contempt of court. 11 U.S.C. §362(k); *Johnston*

*Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 620 (9th Cir.1993) (holding that a corporation may recover civil contempt damages for an automatic stay violation).

"[A]utomatic stay provisions are treated as specific and definite orders of the Court" and "a willful violation of the automatic stay is contemptuous." *In re Miller,* 22 B.R. 479, 481 (Bankr. D. Md. 1982) (citations omitted). Because civil contempt is a "severe remedy," a bankruptcy court should not resort to civil contempt sanctions where there is a "fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen,* 587 U.S. 554, 561, 139 S. Ct. 1795, 1801-02 (2019) (*quoting California Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 618, 5 S. Ct. 618, 622 (1885)).

The source of the bankruptcy court's inherent authority to employ the civil contempt power is 11 U.S.C. § 105, pursuant to which it may "issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." To hold a party in civil contempt, the moving party must show the court, by clear and convincing evidence:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) ... that the decree was in the movant's "favor;"

(3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and

(4) ... that [the] movant suffered harm as a result.

*In re Grand Jury Subpoena,* 597 F.3d 189, 202 (4th Cir. 2010) (*Ashcraft v. Conoco,* Inc., 218 F.3d 288, 301 (4th Cir. 2000) (alterations in original); *In re Rountree,* 448 B.R. 389, 416 (Bankr. E.D. Va. 2011) (relying on the Fourth Circuit four-factor standard outlined above and also recognizing 11 U.S.C § 105(a) as the bankruptcy court authority to hold a party in civil contempt for failing to

comply with a previous order); *In re Mead*, No. 10-09630-8-SWH, 2012 WL 627699, at *2 (Bankr. E.D.N.C. Feb. 24, 2012); *In re Bock*, 297 B.R. 22, 29 (Bankr. W.D.N.C. 2002).

Under the fair ground of doubt standard, "civil contempt ... may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *In re Carnegie*, 621 B.R. 392, 410 (Bankr. M.D.N.C. 2020) (*quoting Taggart*, 587 U.S. at 562, 139 S. Ct. at 1795). The fair ground of doubt standard "is generally an objective one. . ." but the subjective intent of a party is relevant. *Id.* For example, "civil contempt sanctions may be warranted when a party acts in bad faith," and "[o]n the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Id.; see also* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2960, pp. 430–431 (2013) (suggesting civil contempt may be improper if a party's attempt at compliance was "reasonable").

As for damages, "[i]t is clear from the very terms of [§ 105(a)] that Congress gave the Bankruptcy Court broad inherent discretionary powers to ensure that the motions made and issues raised before it are managed efficiently and justly[,] including the authority to award attorney's fees." *In re Ergle*, 656 B.R. 483, 487 (Bankr. D.S.C. 2024) (*quoting In re Simmons*, 623 B.R. 288, 293 (Bankr. D.S.C. 2021)).

### III.    VIOLATIONS OF THE STAY

#### A. Purported Transfer

Mr. and Mrs. Gross maintain that WSS transferred to them personally certain assets abandoned by the Trustee in the case. In support, they presented one document, the Transfer Document. Whether or not they assert the Intellectual Property aspects of the Potential Claims in the District Court Action (a point they dispute), and regardless of whether or not the automatic

stay was in effect and would void a transfer of abandoned assets without formal stay relief first obtained from the bankruptcy court, their ability to proceed with making the Potential Claims presupposes that the Grosses first received full ownership or title to the subject causes of action under state law.

Before considering the effect of its bankruptcy case with respect to the transfer, the first question is whether it actually even transferred the Potential Claims to Mr. and Mrs. Gross in the first place. WSS is a North Carolina limited liability company ("LLC")[4] and all pertinent events took place in North Carolina. To demonstrate a valid transfer of an asset by a LLC, the subject instrument—here, the Transfer Document —must reflect on its face clear language of the transfer and execution of the document by a person "duly authorized" to sign on behalf of that company under North Carolina law.

To be effective, a transfer document submitted on behalf of a LLC in North Carolina should be executed by one of the following methods:

(1) A manager or other company official.

(2) If the document is the articles of organization, a person acting in the capacity of an organizer or a member as provided in G.S. 57D-2-21(a)(2).

(3) If the LLC has never had any members, an organizer.

(4) If the LLC is in the hands of a receiver, trustee, or other court-appointed fiduciary, by that fiduciary.

N.C. Gen. Stat. § 57D-1-20(b).

---

[4] Per the North Carolina Secretary of State website, WSS is a LLC with a principal place of business in Cary, North Carolina, with three officials listed in its last Annual Report dated April 14, 2022: Michael A. Gross, Member; Susan L. Gross, Vice President; and Premier Trust, Inc., Member. N.C. SEC'Y OF STATE, *Sec'y of State Business Registration Search*, www.sosnc.gov, https://www.sosnc.gov/online_services/search/Business_Registration_Results (last visited June 6, 2024).

As subsections (3) and (4) of the statute do not apply here; the purported transfer must therefore be reviewed under subsections (1) or (2). First, with respect to subsection (2), no operating agreement for WSS has been produced in the context of this matter, so in the absence thereof, the authority to act on behalf of the LLC is governed by N.C. Gen. Stat. § 57D-3-20, which provides that management of an LLC is vested in its managers. N.C. Gen. Stat. § 57D-3-20(a). All members by virtue of their status as members are managers of the LLC, together with any other person or persons who may be designated as a manager in, or in the manner provided in, the operating agreement. § 57D-3-20(d). Subject to the direction and control of a majority of managers, each manager may act on behalf of the LLC "in the ordinary course of the LLC's business." § 57D-3-20(c).

Since no copy of the operating agreement of WSS has been produced for the court, the court looks to the Debtor's Schedules and Statements, Statement of Financial Affairs, Question 28 (Dkt. 48, page 29), signed under penalty of perjury, stating that the Gross Family Protection Trust, which is controlled by Mrs. Gross as its "Family Trustee," owns a 99.9% interest in the Debtor. The other 0.1% of WSS ownership interest is shown there as being held by Mr. Michael Gross, who is the son of Mr. and Mrs. Gross. The case record and history therefore indicate that the WSS members/managers are Michael Gross and the Gross Family Protection Trust. In addition, throughout the WSS case prior to its conversion to chapter 7, Mrs. Gross was constantly referred to as a vice-president of WSS, and she made filings and testified, under penalty of perjury, on behalf of WSS. Thus, before taking the effect of the bankruptcy case filing into effect, it would appear that the Gross Family Protection Trust could act for WSS under N.C. Gen. Stat. § 57D-1-20(a-b)(1), and possibly Mrs. Gross personally under N.C. Gen. Stat. § 57D-3-20.

The Transfer Document appears to be an attempt to create a "bill of sale" or similar instrument to evidence and accomplish moving the abandoned assets of WSS (including the Potential Claims) from the chapter 7 debtor WSS to Mr. and Mrs. Gross individually. Mrs. Gross signed the document, but *not* in her capacity as a WSS vice president, but rather as the "Family Trustee" for the Gross Family Protection Trust, along with a second purported trustee of that trust.[5] On its face, those two signatories appear to act solely in their Gross Family Protection Trust trustee capacities, not as the Gross Family Protection Trust acting as a WSS member; nor did Mrs. Gross sign the document in her capacity as the vice-president or otherwise as a manager of WSS. Her signature is limited to her "Family Trustee" hat.

If the only issue with the Transfer Document was the exact form of the signatures appearing at its bottom, and before considering the effect of the automatic stay as discussed below, in ordinary circumstances that flaw could be subsequently cured with ratification or waiver. However, more important than the signature flaw is the abject failure of document's language to transfer any property or asset of WSS. The document on its face provides, "Susan L. Gross, Family Trustee under The Gross Family Protection Trust, agrees to sell *the Gross Family Protection Trust's interest* in the abandoned assets of Wireless Systems Solutions LLC" (emphasis added) to Mr. and Mrs. Gross. However, the Gross Family Protection Trust—even though it owns virtually all of the member interest in WSS—did not then, nor does it now, own any direct property interest in the actual "abandoned assets of Wireless Systems Solutions LLC." WSS owns its assets; the Trust's ownership is limited to the limited liability company membership interest of WSS, more

---

[5] A person shown as "Dawn Wilson" in her alleged capacity of an entity named Premier Trust, Inc. also signed the document in as a "Trust Officer" of Premier Trust, Inc. It is not clear from the record what legal relation Premier Trust, Inc. has to The Gross Family Protection Trust. Further, the court has never been presented with the formation and other documents that support the valid existence and efficacy of The Gross Family Protection Trust as a legally recognizable entity and makes no finding herein to that effect.

akin to owning shares of stock. Nowhere in the instrument's operative language does WSS (as opposed to the family trust) sell, convey, assign, or transfer the "abandoned assets," both tangible and intangible (like the Potential Claims).

If the Transfer Document is invalid, whether by language or lack of authority or corporate capacity, no property interest is transferred under it. S*ee Corley v. Cozart,* 115 F.2d 119, 120 (5th Cir. 1940) (bill of sale held invalid because the individual had no authority or right to execute the instrument covering assets belonging to the corporation); *Tuttle v. Junior Bldg. Corp.*, 228 N.C. 507, 511, 46 S.E.2d 313, 316 (1948) (no implied or inherent authority in the absence of corporate authority to convey property of the corporation); *In re Coley*, 608 B.R. 625, 634 (Bankr. E.D.N.C. 2019) (individual grantor signatures on a deed of real property owned by a limited liability company not valid).

Under the cases and applicable statutes cited above, due to the invalidity of the signatures and even more important the lack of executing language, coupled with the continued effect of the bankruptcy stay as discussed below, nothing was transferred by the Transfer Document. Mr. and Mrs. Gross have failed to show a transfer of any assets. Therefore, the Potential Claims remain the sole property of WSS, with attendant continued application of the automatic stay to all such property for the reasons discussed below.[6]

### B.  The Stay Applies to WSS Debtor's Interest in the Abandoned Assets

Even if the language deficiencies in the Transfer Document could be waived or cured, the question arises whether WSS, while still in chapter 7, has the power to assign abandoned assets

---

[6] This section of the Order merely determines that, under an analysis of North Carolina law, and in the next section, federal bankruptcy law, the Potential Claims were not validly transferred to Mr. and Mrs. Gross and remain the property of WSS, which is not a party to that action.  Whether or not the claims and causes of action in the District Court Action can survive a Rule 12(b) motion to dismiss without owning the Potential Claims still retained by WSS is before the District Court, not this bankruptcy court.

unilaterally without notice to interested parties (such as the Trustee and SmartSky) and bankruptcy court approval. Mr. and Mrs. Gross contend that when the abandoned assets reverted back to the Debtor under the Order Abandoning Property, they were free to purchase the same (without the Intellectual Property) without prior motion or notice filed in the WSS chapter 7 case. In effect, they contend that the automatic stay had no further force and effect after abandonment, and therefore this court has no jurisdiction to consider the validity or effect of the transfer without notice. However, if the automatic stay continues to apply, obtaining relief from stay is first necessary, and actions taken in violation of the stay are *void ab initio*. *See In re Wardrobe,* 559 F.3d at 934.

Entry of the Order Abandoning Property only removes the bankruptcy estate's interest in the Potential Claims (except for their intersection with the Intellectual Property as discussed in the next section). Section 362(a) differentiates between acts against the debtor, against property of the debtor and against property of the estate. *In re Jones*, 339 B.R. at 364. Thus, for purposes of the debtor side of the automatic stay, only the subsections (3), (4), and to a limited extent (1) of section 362(a) are limited to the bankruptcy estate and therefore have no further applicability after abandonment. However, as discussed above in Part II. A., nothing in the Order Abandoning Property, or section 554 of the Bankruptcy Code, removes from the jurisdiction of the bankruptcy court concerning the *debtor's* interest in the Potential Claims.

As to the applicable sections relevant to actions against property of the debtor, Section § 362(a)(5) stays "any act to create, perfect, or enforce against property of the debtor any lien" to

the extent it secures a prepetition claim; and § 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

The claims in the District Court Action arose prepetition. By first claiming to obtain the Potential Claims via the Transfer Document, regardless of whether that transfer was successful, and then by bringing the District Court Action, regardless of whether they assert the estate's Intellectual Property rights therein, Mr. and Mrs. Gross, attempt for themselves to "collect, assess, or recover a claim" that belonged to the debtor WSS prepetition. These actions violate the automatic stay as imposed by section 362(a)(6).

### C.    Estate Interest in Intellectual Property

The Bankruptcy Code absolutely prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Even if other portions of the automatic stay statute did not apply or could be waived or modified sufficiently to allow Mr. and Mrs. Gross to proceed with the District Court Action without continued violation, they readily agree that the retained "Intellectual Property" of the WSS bankruptcy estate cannot be asserted by them in the District Court Action. They seek to separate the Intellectual Property aspect of the Potential Claims from the causes of action asserted in the District Court Action.

Intellectual Property, as excluded and identified in paragraph 3.d. of the Order Abandoning Property, is a broadly defined term that encompasses trade secrets pertaining to and including proprietary software, copyright, and patent protected intangible assets. The Bankruptcy Code definition of "intellectual property" specifically includes a "trade secret." See 11 U.S.C § 101(35A)(A).[7]  The Supreme Court has also relied on the premise that intellectual property

---

[7] "The term 'intellectual property' means (a) trade secret; . . . to the extent protected by applicable nonbankruptcy law. 11 U.S. § 101(35A)(A).

includes or can consist of the "subject matter of trade secrets." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 470, 94 S. Ct. 1879, 1881 (1974); *see also Hyper Healing, LLC v. Shapiro*, No. 2:19-CV-3583-BHH, 2021 WL 4483034, at *3 (D.S.C. Sept. 30, 2021) (finding intellectual property "would certainly include trade-secret rights" partially relying on the black-letter definition of intellectual property; *see Black's Law Dictionary* 930 (10th ed. 2014), defining "Intellectual property" as "[a] category of intangible rights protecting commercially valuable products of the human intellect" and explaining that "[t]he category comprises primarily trademark, copyright, and patent rights, *but also includes trade-secret rights*, publicity rights, moral rights, and rights against unfair competition").

In the District Court Action, Mr. and Mrs. Gross assert a right to recover money damages from the defendants therein for the conspiracy associated with the misappropriation and theft of trade secrets as well as the damages inflicted on WSS due to their actions." (Complaint, ¶ 90). Counts One, Four, Six and Seven in the Complaint all attempt to assert violation of a federal trade secret statute.[8]   These alleged trade secret violations are tied to a host of allegations sprinkled throughout the Complaint concerning WSS software and "know-how," asserting that the defendants acted or conspired to, among other things, : "put in place a plan to gain illegal and unauthorized access to WSS systems and WSS proprietary IP . . . [which] they knew were WSS' proprietary, copyrighted software" (Compl. ¶ 31); "gain unauthorized access to WSS equipment [to] disassemble, copy and overwrite WSS' proprietary software" (Compl. ¶ 35); "obtain unauthorized access to WSS' IP" (Compl. ¶ 64); [change and erase] "embedded software which was proprietary IP of WSS" and "WSS proprietary, copyrighted software" (Compl. ¶¶ 65-67);

---

[8] In addition, Count Two is labeled "Trade Secret Misappropriation" but cites to 18 U.S.C. § 1030, which appears to be part of the Computer Fraud and Abuse Act. Whether a private right of action under that Act exists is an issue outside the purview of this court.

"enable unauthorized access to trade secrets and WSS IP" (Compl. ¶ 69); "erasing/destroying the WSS proprietary software loads embedded on WSS' Baseband units" (Compl. ¶ 71); and "erased/destroyed WSS proprietary, copyrighted IP" (Compl. ¶ 74).

The allegations for these four causes of actions are inextricably intertwined with WSS Intellectual Property including but not limited to trade secrets. It is undisputed that the WSS Intellectual Property assets were not abandoned by the Trustee. Mr. and Mr. Gross did not seek relief from stay in the WSS chapter 7 case with notice to interested or affected parties such as the Trustee and SmartSky.  Therefore, and independent of the two categories of the "debtor" stay violations discussed above, the assertions of Mr. and Mrs. Gross of a personal right of recovery in Counts One, Four, Six and Seven in the Complaint for WSS's trade secret claims violate the automatic stay. 11 U.S.C. § 362(a)(3).

### D. Multiple Violations of the Stay

Whether by (1) an invalid transfer under state law, leaving the Potential Claims with WSS only; (2) the transfer of debtor property interests in the Potential Claims existing prepetition without obtaining stay relief as required by the Bankruptcy Code; or (3) the Intellectual Property aspects specifically retained by the bankruptcy estate (as acknowledged by Mr. and Mrs. Gross) being asserted in the District Court Action, Mr. and Mrs. Gross have violated the automatic stay of 11 U.S.C. § 362(a), and they continue to violate the stay by asserting ownership over the Potential Claims by pursuing recovery tied to the Intellectual Property in the District Court Action.

### IV.    Contempt and Damages

Having decided Mr. and Mrs. Gross are in violation of the automatic stay in the instances noted and for the reasons described above, the court must determine whether any damages or sanctions should be imposed, and if an injunction should be issued. In the Motion, SmartSky

requests the court (1) use its statutory power under 11 U.S.C. § 105 to hold Mr. and Mrs. Gross in contempt; (2) impose a daily fine or imprisonment until such time as the Grosses voluntarily dismiss the District Court Action with prejudice; and (3) award reasonable attorney's fees and expenses to be paid by Mr. and Mrs. Gross to SmartSky for preparing, filing, and pursing a motion to dismiss the District Court Action, and opposing the related motions for preliminary injunction and expedited discovery. For the reasons expressed below, the court will order Mr. and Mrs. Gross cease pursuing any aspects of the WSS Intellectual Property in the District Court Action, but declines to impose fines, attorney fees, or other monetary sanctions retroactively at this time, holding the matter open pending further outcome of the District Court Action.

Despite the litany of violations described above, according to their Response and statements made at the hearing (as proffer, not testimony), the court finds that Mr. and Mrs. Gross subjectively believed that the Order Abandoning Property, minus the stated exceptions, abandoned the remaining tangible and intangible assets including the claims they assert in the District Court Action (Response, pgs. 3-4, ¶ 4). While they are sorely mistaken in failing to recognize those claims include the WSS Intellectual Property, and that the WSS Potential Claims were not transferred to them, nothing in this bankruptcy case prevents Mr. and Mrs. Gross from pursuing claims in the District Court Action (or elsewhere) that <u>solely</u> belong to them personally. Further, Mr. and Mrs. Gross explicitly asserted in their Response that they do not seek redress related to WSS's intellectual property as part of the estate retained by the Trustee, but rather seek redress for damages suffered in their personal capacity (Response, pg. 2; *see also*, footnote 2 above).  They are now placed on notice, however, that the claims asserted include bankruptcy estate assets.[9]

---

[9] The District Court Action is not pending before this court, which is not in a position to rule or determine whether any of the seven counts asserted therein are owned by Mr. and Mrs. Gross solely and personally rather than by WSS as the debtor for abandoned claims and the bankruptcy estate for the Intellectual Property aspects of the Potential Claims.

Further, while a violation of the automatic stay has occurred, SmartSky has not shown by clear and convincing evidence at this point that it has suffered harm tied to this bankruptcy case (as opposed to in the District Court Action) as a direct result, and therefore no attorney fees are awarded to it yet. Civil contempt is a severe remedy which should not be resorted to without prior warning and where there is a viable ground of doubt as to the wrongfulness of the conduct and no showing of bad faith. Further, SmartSky is not a defendant in the District Court Action. In fact, neither the Trustee (who controls the Intellectual Property as an estate asset), nor any defendant in the District Court Action is a party to the contempt motion. Therefore, the court declines to hold Mr. and Mrs. Gross in contempt at this time. However, a future or continuing violation of the court's order regarding the Potential Claims and Intellectual Property by Mr. and Mrs. Gross after the issuance of this Memorandum Opinion and Order would be a different matter.

## CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Mr. and Mrs. Gross cease and desist their pursuit of (a) all causes of action that belong solely to WSS under the Potential Claims, and (b) recovery under Counts One, Four, Six and Seven in the Complaint to the extent those counts seek recovery for violations of WSS Intellectual Property and trade secret claims. Because there is a fair ground of doubt as to the effect of Mr. and Mrs. Gross's conduct on other parties (*see Taggart*, 587 U.S. at 561, 139 S. Ct. at 1801), and the Trustee has not sought damages for the WSS bankruptcy estate, the court declines to hold Mr. and Mrs. Gross in contempt at this time or otherwise order recovery of legal fees for SmartSky.

**END OF DOCUMENT**